IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ELIZABETH HOLDEN              )
                             )
v.                           )        No. 3:16-2497
                             )
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION[1]             )


To:    The Honorable Aleta A. Trauger, District Judge


## R E P O R T  A N D  R E C O M M E N D A T I O N

Pending before the Court is the *pro se* Plaintiff's motion for judgment on the administrative record. *See* Docket Entry ("DE") 20. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled," and therefore not entitled to Disability Insurance Benefits ("DIB"). (*See* Administrative Transcript ("Tr.") at 28-30). This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b), for initial consideration and a report and recommendation. *See* DE 5.

Upon review of the administrative record and consideration of the parties' filings, I find no error that warrants reversal of the Commissioner's decision in this case and therefore recommend that Plaintiff's motion for judgment on the administrative record (DE 20) be **DENIED.**

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.* Pursuant to Fed. R. Civ. P. 17(d), a public officer who is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill is no longer the Acting Commissioner, the Clerk is DIRECTED to identify Defendant by the official title rather than by name.

# I. FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on February 13, 2014 due to depression, post-traumatic stress disorder ("PTSD"), anxiety, tremors, and Hepatitis C, with an alleged disability onset date of July 26, 2012.[2] (Tr. 80-81, 118).[3] Her application was denied initially and on reconsideration. (Tr. 80, 107). Pursuant to her request for a hearing before an ALJ, Plaintiff appeared with counsel and testified at a hearing before ALJ Alfred M. Smith on November 3, 2015. (Tr. 48). On December 29, 2015, the ALJ denied the claim. (Tr. 28-30). On July 21, 2016, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision; therefore, the ALJ's decision stands as the final determination of the Commissioner. (Tr. 1-3).

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2018.

2. The claimant has not engaged in substantial gainful activity since February 14, 2014, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: post-traumatic stress disorder (PTSD); depression; and hepatitis C (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). She can stand and walk for 6 hours out of an 8-hour workday and sit for 6 hours out of an 8-hour workday. The claimant is capable of understanding and remembering at least simple directions. She can maintain attention and concentration for at least 2-hour periods during an 8-hour workday and complete a normal workweek. She can adequately relate to the public, accept supervision,

---

[2] Medical records also revealed that Plaintiff was previously diagnosed with a substance dependence disorder. (Tr. 118).

[3] Plaintiff later amended the alleged onset date to February 14, 2013. (Tr. 67).

and deal appropriately with criticism. She is able to manage the demands of a working environment, adjust to task setting, and deal with normal changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 26, 1966 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563) (Ex. C1E).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564) (Ex. C2E).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 14, 2014 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 33-42).

On appeal, Plaintiff submits that the ALJ erred by disregarding medical evidence that supports a finding of disability. DE 20 at 3. Although not articulated as such, Plaintiff effectively argues that the ALJ's decision is not supported by substantial evidence.

## II.    ANALYSIS

### A.  Standard of Review

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d

842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id.* § 404.1520(a)(4). At Step 1, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at Step 2, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at Step 3, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at Step 4, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; and at Step 5, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id.* §§ 404.1520(a)(4)(i)-(v).

If the ALJ determines at Step 4 that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the

sequential analysis. *Id.* § 404.1520(a). "Past relevant work" is defined as work that claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (citing 20 C.F.R. § 404.1560(b)(1)). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to Step 5 to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

In cases involving a *pro se* claimant, such as the instant one, the ALJ assumes a "special duty to ensure that a full and fair administrative record is developed." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) (citing *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1051 (6th Cir. 1983)). However, any determination regarding the ALJ's

fulfillment of this duty must be made on a case-by-case basis. *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002).

**B.  The Commissioner's Decision**

The ALJ in the instant case resolved Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform a work at a medium level of physical exertion with express limitations to account for her severe impairments, and that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform despite such limitations. (Tr. 33-42).

**C.  Assertions of Error**

**1. The evidence of record.**

The thrust of Plaintiff's argument is that the ALJ failed to consider evidence in the record that supports a finding of disability. Plaintiff specifically claims that the ALJ erred by improperly discounting both a series of low global assessment of functioning ("GAF") scores and the opinion of Denice Fish, a professional counselor, who completed a "Medical Assessment-Mental" ("MAM") in October of 2015. DE 20 at 3.

A GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 415 (6th Cir. 2006) (internal citations omitted). In his opinion, the ALJ identified multiple low GAF scores that were assigned to Plaintiff during her treatment at Mental Health

Cooperative ("MHC"), including 48, 42, and 39. (Tr. 37-38).[4] The ALJ gave little weight to these scores, however, noting that GAF scores are "non-standardized, subjective assessments" that do not necessarily serve a purpose in the realm of claims for Social Security. (Tr. 37).

Plaintiff claims that the ALJ erred by overlooking medical evidence in the record that validates these GAF score assignments, though she fails to identify any such evidence. Indeed, Plaintiff fails to cite any evidence in the record that establishes the existence of a mental disability, as is her burden. *See Key v. Callahan*, 109 F.3d at 274. This is especially damaging to Plaintiff's argument since, as discussed by the ALJ, GAF scores have little inherent value in assessing a claim for disability benefits. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place."). The Court also notes that each of these GAF scores was assigned *prior* to the alleged onset of disability (Tr. 281, 289, 358), which does not render the scores entirely irrelevant, but certainly diminishes their bearing on the ALJ's determination. *See Nagle v. Comm'r of Soc. Sec.*, 191 F.3d 452 (table), 1999 WL 777355, *1 (6th Cir. September 21, 1999) ("Evidence relating to a time outside the insured period is only minimally probative[.]") (internal citation omitted).

With respect to the MAM, Ms. Fish concluded that Plaintiff has severe limitations in several areas as a result of her multiple conditions, which she identified as chronic major depression, PTSD, and social anxiety. (Tr. 483-84). Ms. Fish found that Plaintiff suffers from marked limitations in her ability to understand and remember, marked limitations in adaptation,

---

[4] A score of 41-50 indicates "serious symptoms ... or any serious impairment in social, occupational, or school functioning...." A score of 31-40 indicates "some impairment in reality testing or communication ... or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood[.]" American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. Text Revision) at 34.

extreme limitations in her ability to sustain concentration and persistence, as well as extreme limitations in social interaction. (Tr. 484).[5]

The Court first notes that Ms. Fish is a licensed professional counselor ("LPC"),[6] which is not considered an "acceptable medical source" under the regulations. *See Stigall v. Astrue*, No. 6:10-27-DCR, 2011 WL 65886, at *5 (E.D. Ky. Jan. 10, 2011) (collecting cases). This is significant because an "acceptable medical source" is required to establish the existence of a medically determinable impairment. *See* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, *2 (August 9, 2006).[7] As an LPC, Ms. Fish is instead considered an "other source" for purposes of the disability analysis, which renders her opinion unqualified for purposes of establishing disability. Even if Ms. Fish were considered an acceptable medical source, there are no records documenting any treatment with Plaintiff,[8] and her MAM contains very little support for any of the limitations she imputes to Plaintiff's condition (*see* Tr. 484), which is crucial to any opinion regarding a claimant's capacity to work. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion ... the more weight we will give that medical opinion. The better an explanation a source provides for a medical

---

[5] The MAM defines marked limitations as "serious limitations; loss in the ability to effectively function; frequently limited," and extreme limitations as "no useful ability to function; constantly limited." (Tr. 484).

[6] *See* Tennessee Dep't of Health: Licensure Verification, http://apps.health.tn.gov/licensure/Results.aspx (last visited March 21, 2018).

[7] SSR 06-03p was rescinded effective March 27, 2017, *see Notice of Rescission of Social Security Rulings*, 82 Fed. Reg. 15263-01 (March 27, 2017), but was in effect at the time of the ALJ's decision. The Court therefore employs SSR 06-03p in its analysis.

[8] Plaintiff claims that she began seeing Ms. Fish shortly before the administrative hearing. (Tr. 68).

opinion, the more weight we will give that medical opinion.").[9] The unsupported restrictions

contained in Ms. Fish's MAM, as well as her conclusory statement that Plaintiff's symptoms

represent a "disabling medical condition" (Tr. 483), were thus properly discounted by the ALJ.

*See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 441 (6th Cir. 2010) ("[T]he ALJ is not

bound by conclusory statements of doctors, particularly where they are unsupported by detailed

objective criteria and documentation.").

Finally, Plaintiff faults the ALJ for according great weight to the opinions provided by

the State agency physicians, each of whom concluded that Plaintiff was capable of performing

work at the level described in the RFC (Tr. 35, 40), based on her lack of treatment with these

physicians. DE 20 at 3. Plaintiff's argument is without merit, as State agency physicians and

consultants represent "highly qualified physicians and psychologists who are experts in the

evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96-6p,

1996 WL 374180, *2 (July 2, 1996). There is no requirement that such physicians provide

treatment to a claimant prior to rendering an opinion regarding the claimant's functional

limitations. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (noting

that "opinions from State agency medical and psychological consultants ... may be entitled to

greater weight than the opinions of treating or examining sources") (internal citation omitted).

The Court also notes with emphasis that Dr. Weinberg, who represents a treating

physician and purportedly referred Plaintiff to Ms. Fish for therapy (*see* Tr. 56), did not provide

an opinion as to any functional limitations caused by Plaintiff's condition. Instead, Dr. Weinberg

drafted a short letter indicating that Plaintiff is currently receiving treatment for opiate addiction

---

[9] Notably, counsel for Plaintiff stated during the hearing that Ms. Fish "doesn't even take notes."
(Tr. 71).

(Tr. 482), a statement that does not establish the existence of any disability. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (internal citation omitted). This is fatal to Plaintiff's argument, particularly since Ms. Fish's "other source" opinion is "not entitled to any special deference." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014). Plaintiff has therefore failed to provide any evidence that establishes the existence of a disabling condition. It was thus proper for the ALJ to rely on the opinions of the State agency physicians, and the undersigned finds that substantial evidence supports the ALJ's determination.

Plaintiff's brief also includes a vague request for "more time" and a statement that she "need[s] a lawyer to help me." DE 20 at 4. To the extent that Plaintiff seeks an extension of time in which to file a motion for judgment on the administrative record, such request is denied as moot since the request itself is contained within the pending motion for judgment on the administrative record. To the extent that Plaintiff seeks appointment of counsel, this request is also denied in light of the Court's previous denial of Plaintiff's motion to appoint counsel. *See* DE 3, 5. Plaintiff has been without representation since the ALJ's unfavorable decision in December of 2015 (*see* Tr. 28), and has thus had ample time to obtain the services of an attorney to represent her before this Court. Moreover, the lack of acceptable opinion evidence in the record indicative of a disabling condition makes it highly improbable that Plaintiff would succeed even if she were able to obtain an attorney at this late stage. There was overwhelming evidence to support the ALJ's decision to deny benefits; the undersigned therefore declines to delay its ruling merely to prolong the inevitable. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (noting that "courts are not required to convert judicial review of agency

action into a ping-pong game") (quoting *NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n.6, 89 S. Ct. 1426, 22 L. Ed. 2d 709 (1969)).

### III.    CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 20) be DENIED and the Commissioner's decision be AFFIRMED.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge